Cooley, Ch. J.:
The legal questions in this case arise upon the following facts:
*45 Prior to June, 1867, Eldad Smith, Isaac Place, and Francis B. Owen were partners in trade under the firm name of Place, Smith & Owen, and as such became indebted to defendants in error in the sum of nine hundred and sixty-nine dollars on book account.
*In the month mentioned the firm was dissolved by [*46] mutual consent, Place purchasing the assets of his co-partners and agreeing to pay off the partnership liabilities, including that to the defendants in error. On the second day of the following month Place informed the defendants in error of this arrangement, and that he had taken the assets and assumed the liabilities of the firm, and they, without the consent or knowledge of Smith and Owen, took from Place a note for the amount of the firm indebtedness to them, payable at one day with ten per centum interest. They did not agree to receive this note in payment of the partnership indebtedness, but they kept it and continued their dealings with Place, who made payments upon it. The payments, however, did not keep down the interest. Place, in 1872, became insolvent and made an assignment, and Smith was then called upon to make payment of the note. This was the first notice he had that he was looked to for payment. On his declining to make payment, suit was brought on the original indebtedness and judgment recovered.
The position taken by the plaintiffs below was, that as they had never received payment of their bill for merchandise they were entitled to recover it of those who made the debt, the giving of the note which still remained unpaid being immaterial. On behalf of Smith it was contended that, by the arrangement between Place and his co-partners, the latter, as between the three, became the principal debtor, and that from the time when the creditors were informed of this arrangement they were bound to regard Place as principal debtor and Smith and Owen as sureties, and that any dealing of the creditors with the principal to the injury of the sureties would have the effect to release them from liability. And it is further contended that the taking of the note from Place, and thereby *46 giving him time, however short, was in law presumptively injurious.
Upon this state of facts the following questions have been argued in this court:
1. Was the note given by Place in the co-partnership *name for the co-partnership indebtedness, but given after the dissolution, binding upon Smith and Owen?
2. If Smith and Owen were not bound by the note, were they entitled to the lights of sureties ? And,
3. Did the taking of the note given by Place discharge Smith and Owen from their former liability ?
On the first point it is argued in support of the judgment that when a co-partnership is dissolved the partner who is entrusted with the settlement of the concern should be held to have implied authority to give notes in settlement. On the other hand it is insisted that in law lie has no such authority, and that if he assumes, as was done in this ease, to give a note in the partnership name, it will in law be his individual note only.
Whatever might be the case if the obligation which was given had been a mere acknowledgment of the amount due, in the form of a due-bill or I O U, we are satisfied that there is no good reason for recognizing in the partner who is to adjust the business of the concern any implied authority to execute such a note as was given in this case. This note was something more than a mere acknowledgment of indebtedness; and it bore interest at a large rate. It was in every respect a new contract. The liability of the parties upon their indebtedness would be increased by it if valid, and their rights might be seriously compromised by the execution of paper payable at a considerable time in the future if the partner entrusted with the adjustment of their concerns were authorized to make new contracts. It was assumed in F. & M. Bank v. Kercheval, 2 Mich., 506-519, that the law was well settled that no such implied authority existed, and we are not aware that this has before been questioned in this state. — See Pennoyer v. David, 8 Mich., 407. We think it much safer to require express authority when such obligations are contemplated, than to leave *47 one party at liberty to execute at discretion new contracts of this nature, wbicb may postpone for an indefinite ^period the settlement of their concerns, when'a settle-meat is the very purpose for which he is to act at all.
For a determination of the question whether Smith and Owen were entitled to the rights of sureties, it seems only necessary to point out the relative position of the several parties as regards the partnership debt. Place, by the arrangement, had agreed to pay this debt, and as between himself and Smith and Owen, he was legally bound to do so. But Smith and Owen were also liable to the creditors equally with Place, and the latter might look to all three together. Had they done so and made collections from Smith and Owen, these parties would have been entitled to demand indemnity from Place. This we believe to be a correct statement of the relative rights and obligations of all.
Now a surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in the two capacities, as is often the case when notes are given or bonds taken; the relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown. If it is unknown to him, his rights are in no manner, affected by it; but if he knows that one party is surety merely, it is only just to require of him that in any subsequent action he may take regarding the debt, he shall not lose sight of the surety’s equities.
That Smith and Owen were sureties for Place, and the latter was principal debtor after the dissolution of the co-partnership, seems to us unquestionable. It was then the duty of Place to pay this debt and save them from being called upon for the' amount. But if the creditors, having a right to jn-oceed against them all, should take steps for *'that purpose, the duty of Place to indemnify, and the right *48 of Smith and Owen to demand indemnity, were clear. Every element of suretyship is here present, as much as if, in contracting an original indebtedness, the contract itself had been made to show on its face that one of the obligors was surety merely. As already stated, it is immaterial how the fact is established, or whether the creditor is or is not a party to the arrangement which establishes it.
This view of the position of- the parties indicates clearly the right of Smith and Owen to the ordinary rights and equities as sureties. The cases which have held that retiring partners thus situated ai’e to be treated as sureties merely, have attempted no change in the law, but are entirely in harmony with older authorities which have only applied the like principle to different states of facts, where the relative position of the parties as regards the debt was precisely the same. We do not regard them as working any innovation whatever. The cases we particularly refer to are Oakeley v. Pasheller, 4 Cl. & Fin., 207; Wilson v. Lloyd, Law R., 16 Eq. Cas. 60; and Millerd v. Thorn, 56 N. Y., 402.
And it follows as a necessary result from what has been stated, that Smith and Owen were discharged by the arrangement made by the creditors with Place. They took his note on time, with knowledge that Place had become the principal debtor, and without the consent or knowledge of the sureties. They thereby endangered the security of the sureties, and as the event has proved, indulged Place until the security became of no value. True, they gave but very short time in the first instance; but, as was remarked by the vice chancellor in Wilson v. Lloyd, L. R., 16 Eq. Cas., 60, 71, “the length of time makes no kind of difference.” The time was the same in Fellows v. Prentiss, 3 Denio, 512, where the surety was also held discharged. — And see Okie v. Spencer, 2 Whart., 253. But that indulgence beyond the time fixed was contemplated when the note was given is manifest from the fact that it was made payable with interest. In a legal point of view this would *be immaterial, but it has a bearing on the equities, and it shows that the creditors received or bargained for a consideration for the very indulgence which was *49 granted, and which ended in the insolvency of Place. When they thus bargain for an advantage which the sureties are not to share with them, it is neither right nor lawful for them to turn over to the sureties all the risks. This is the legal view of such a transaction, and in most cases it works substantial justice.
The judgment must be reversed with costs, and a new trial ordered.
The other justices concurred.