# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2016, 9:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of E.R. (minor child)

and

J.R. (father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

September 30, 2016

Court of Appeals Case No. 54A01-1604-JT-926

Appeal from the Montgomery Circuit Court

The Honorable Harry A. Siamas, Judge

Trial Court Cause Nos. 54C01-1510-JT-258

**Pyle, Judge.**

# Statement of the Case

J.R. ("Father") appeals the involuntary termination of the parent-child relationship with his son, E.R.[1]  On appeal, Father does not challenge any of the trial court's findings or conclusions supporting its order to involuntarily terminate his parent-child relationship with E.R.  Instead, Father—who had notice of the termination hearing, appeared telephonically for the hearing, and was represented by counsel throughout the hearing—argues that the trial court abused its discretion by denying his oral request for a continuance of the termination hearing made on the day of the hearing.  Because Father did not show any good cause for the continuance or show that he would be prejudiced, we conclude that the trial court did not abuse its discretion by denying the oral request for a continuance and affirm the trial court's judgment.

We affirm.

# Issue

Whether the trial court abused its discretion by denying Father's oral request for a continuance made on the day of the termination hearing.

---

[1] E.R.'s mother, P.F., consented to the voluntary termination of her parental rights; thus, she is not involved in this appeal.

## Facts

[3] When E.R. was born in December 2013, Father signed an affidavit of paternity. A month later, Father moved out of Indiana and apparently did not have regular visitation with E.R. or pay child support.

[4] In March 2014, Mother was incarcerated and appointed E.R.'s maternal grandmother ("Maternal Grandmother") to be his temporary guardian. The following month, in April 2014, the Indiana Department of Child Services ("DCS") removed E.R. from Maternal Grandmother's home after she was arrested on a warrant.[2] Thereafter, DCS filed a petition alleging that E.R. was a child in need of services ("CHINS"). During the initial hearing, Father waived his right to appointed counsel. Following a fact-finding hearing, the trial court determined that E.R. was a CHINS. The trial court ordered Father to, among other things, have a parenting assessment and supervised visitation with E.R. Father did not keep in contact with DCS, did not participate in services, and had only a few supervised visits with E.R.

[5] In October 2015, DCS filed a petition to terminate Father's parental rights to E.R. DCS initially had trouble serving Father with the petition because he had failed to provide an updated address; however, after hiring an investigator to locate him, DCS was eventually able to serve him with the petition. Thereafter, on January 19, 2016, the trial court held an initial hearing at which Father appeared telephonically. The trial court offered and then appointed counsel for

---

[2] Another child was also removed from the home, but that child is not the child of Father.

Father.  The trial court took Father's address, which was in Kentucky, and informed Father that his appointed attorney would contact him.  The trial court instructed Father that he would "need to take it upon [him]self to contact [the attorney] when [he] g[o]t that so [he] c[ould] discuss this" matter.  (Tr. 8).  The trial court also scheduled the termination hearing for April 14, 2016 at 1:00 p.m., and Father responded, "That sounds great."  (Tr. 11).  The trial court again informed Father to contact his public defender to discuss the case with him.[3]

[6]   On April 14, 2016, the trial court held the termination hearing.  At the time of the hearing, E.R. was a little over two years old.  Father appeared telephonically at the hearing and was represented by counsel.  At the beginning of the hearing, the trial court noted that Father "was afforded the opportunity prior to the hearing to speak with [his counsel] by telephone."  (Tr. 14).  Thereafter, Father's counsel asked for Father to be sworn in so that he could ask Father some preliminary questions.  During questioning, Father stated that he had moved to Evansville, Indiana and confirmed that he had received a letter from counsel around January 26, 2016.  Father, however, stated that his "soon to be ex-wife" had shredded the letter, leaving him with no contact information for his attorney.  (Tr. 16).  Father also stated that she had kicked him out of the house and that he had been "pretty much homeless for three months."  (Tr. 17).  Father's counsel then made an oral motion to continue the

---

[3] During this initial hearing, Father told the trial court that, although he had signed the affidavit of paternity at E.R.'s birth, he did not know if E.R. was his child.  When Father requested to have a paternity test, the trial court instructed him to consult with his appointed attorney.

hearing. DCS objected to the continuance, noting Father's prior notice of the hearing and his lack of involvement and contact with E.R. and DCS. The trial court denied Father's oral request to continue the hearing, stating, in relevant part:

> The court finds the matter was set for initial hearing on January nineteenth, two thousand sixteen. [Father] appeared and was given [by] this court [the] date of April fourteenth of two thousand sixteen at one p.m. . . . [Father] admits that he received a letter from [his appointed counsel] and contact information from [counsel]. He states at some point thereafter it was shredded. However, he apparently did not contact [his appointed counsel]. [Father] had the telephone number certainly of this court. He could have contacted the court to ask who his public defender was if he had forgotten or didn't have that information. He did not do that. The matter's been set for this hearing for almost ninety days and [Father]'s personal circumstances do not persuade the court that a continuance should be granted. He's known about the hearing for ninety days. The court does not find good cause to continue the matter and we will proceed.

(Tr. 18).

[7] The trial court then had DCS present its witnesses, and Father's counsel cross-examined them. Prior to Father's presentation of witnesses, the trial court gave Father another opportunity to speak privately with his counsel by phone. Thereafter, the trial court entered a detailed order involuntarily terminating Father's parental rights to E.R. Father now appeals.

# Decision

On appeal, Father does not challenge any of the trial court's findings or conclusions supporting its order to involuntary terminate his parent-child relationship with E.R. Instead, he presents a single issue for our review, contending that the trial court abused its discretion by denying his oral request for a continuance.

Pursuant to our Indiana Trial Rules, "[u]pon [a] motion" to continue a trial filed by a party, a trial court has "discretion" to "postpone[] or continue[]" the trial. Ind. Trial Rule 53.5. "[A] trial court shall grant a continuance upon motion *and* 'a showing of good cause established by affidavit or other evidence.'" *Gunashekar v. Grose*, 915 N.E.2d 953, 955 (Ind. 2009) (quoting Ind. Trial Rule 53.5) (emphasis added). "Generally speaking, a trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review." *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. 2014) (citing *Rowlett v. Vanderburgh Cnty. Office of Family & Children,* 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*). "'An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion,' but 'no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial.'" *Id.* (quoting *Rowlett,* 841 N.E.2d at 619).

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the

circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request was denied." *J.P. v. G. M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589-590 (1964), *reh'g denied*). Continuances to allow time for additional preparation are generally disfavored and require a showing of "good cause" and how "it is in the interests of justice." *Williams v. State*, 681 N.E.2d 195, 202 (Ind. 1997). *See also Clodfelder v. Walker*, 125 N.E.2d 799, 800 (Ind. 1955) (explaining that a motion for continuance should be made at the earliest practicable time after knowledge of the necessity for a continuance). Furthermore, "[a] continuance requested for the first time on the morning of trial is not favored." *Lewis v. State*, 512 N.E.2d 1092, 1094 (Ind. 1987).

[11] Father argues that the trial court's denial of his oral continuance request was an abuse of discretion despite the facts that he had notice of the hearing, was able to participate in the hearing telephonically, and was represented by counsel throughout the hearing. He does not contend that he had, or that he presented, any "good cause" for the continuance. Nor does he show how he was prejudiced by the denial.

[12] We conclude, however, that the trial court's denial of Father's continuance request was not an abuse of discretion. Father requested the continuance by an oral motion on the day of trial and not by a motion supported by a "showing of good cause" as required by Trial Rule 53.5. Indeed, the trial court specifically determined that Father had failed to show good cause. Additionally, Father did not assert that he would be prejudiced. Instead, he indicated that he was

aware of the hearing date and had received his appointed counsel's letter. When denying Father's continuance request, the trial court noted that Father had received notice of the termination hearing ninety days prior to the hearing and that he had received his attorney's contact information but had failed to contact counsel. Furthermore, the trial court gave Father the opportunity to consult with his counsel by telephone prior to the hearing and again prior to presenting his case-in-chief. Given the deference to the trial court's decision on this matter, we conclude that the trial court did not abuse its discretion by denying Father's counsel's oral request for a continuance made on the day of the termination hearing. *See, e.g.*, *Gunashekar*, 915 N.E.2d at 956 (affirming the trial court's denial of a motion to continue a bench trial).

[13] Affirmed.

Bradford, J., and Altice, J., concur.